## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

CASE NO:   08-80163-CIV-RYSKAMP/VITUNAC

INTERNATIONAL SEAWAY
TRADING CORPORATION,

      Plaintiff,

v.

WALGREENS CORPORATION and
TOUCHSPORT FOOTWEAR USA, INC.,

      Defendants.

_____/

## ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

THIS CAUSE comes before the Court upon defendants' motion for summary judgment [DE 25] filed on June 24, 2008 along with their statement of material facts [DE 22].  Plaintiff responded [DE 27] on July 14, 2008.  Defendants replied [DE 30] on July 24, 2008 along with their objections to plaintiff's statement of facts [DE 31] and filed their objection to the admissibility of Harvey Gerdy's declaration [DE 32].  This Court held a hearing on September 17, 2008 to consider the motion.  The matter is now ripe for adjudication.

### I. Introduction

This is an action for patent infringement under 35 U.S.C. § 271(a).  Accordingly, this suit is brought pursuant to this Court's federal question jurisdiction.  Venue is proper as Walgreens operates stores in the district.  The following facts are based on the plaintiff's allegations contained in the complaint.

On October 3, 2006, the United States Trademark and Patent Office (USTPO) issued

patent number D529,263 ('263) to Michael Wolf, who assigned the patent to plaintiff. Since that time, plaintiff "marked"[1] shoes in the United States under this patent number.

In March 2007, plaintiff discovered that Walgreens was selling two types of footwear, WIC# 583174 and 8800W/M SANDALS, that it believes infringe the '263 patent. As such, plaintiff's counsel wrote a letter to Walgreens on April 18, 2007 explaining that the shoes violated plaintiff's patent. On June 19, 2007, counsel for Touchsport responded to the April 18, 2007 letter and stated that it supplied the alleged infringing shoes.

On June 26, 2007, the USTPO issued patent numbers D545,032 ('032) and D545,033 ('033) to Michael Wolf, who assigned the patents to plaintiff. On June 19, 2007, plaintiff's counsel e-mailed Walgreens' counsel informing him or her that plaintiff believed the same shoes that infringed the '263 patent also infringed patent numbers '032 and '033.

Plaintiff believes that Touchsport has imported, and continues to import shoes that violate the '263, '032 and '033 patents and that Walgreens has sold, and continues to sell those same shoes. Plaintiff believes that defendants have wilfully, knowingly, and deliberately infringed the '263, '032 and '033 patents by importing and selling the shoes without a license from plaintiff and will continue to infringe the patents without a court order preventing such activity. Based on their actions, plaintiff alleges that defendants have made unlawful gains and profits and deprived plaintiff of its rights and profits. Plaintiff alleges that it has been damaged and harmed as a result.

Plaintiff seeks a permanent injunction "restraining, enjoining, and prohibiting" Walgreens

---

[1]This Court believes that plaintiff intended to use the word marketed and that "marked" is a typo.

and Touchsport from making, selling, advertising or distributing, directly or indirectly, or engaging in contributory infringement with any party concerning any items that infringe patents '263, '032, '033. Plaintiff also seeks an accounting of any profit or benefit defendants have received from the infringing footwear and for "an award of Defendant Walgreens total profit[.]"

## II.  Standard of Review

A  party is entitled to summary judgment when "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  Summary judgment should be entered only when the moving party has sustained its burden of showing the absence of a genuine issue as to any material fact when all the evidence is viewed in the light most favorable to the nonmoving party. *See Sweat v. Miller Brewing Co.,* 708 F.2d 655 (11th Cir. 1983). Summary judgment is mandated when a plaintiff "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986).

In considering a motion for summary judgment, the Court must construe all facts and draw all reasonable inferences in favor of the non-moving party. *HCA Health Services of Ga., Inc. v. Employers Health Ins. Co.*, 240 F.3d 982, 991 (11th Cir. 2001).  The non-moving party bears the burden of coming forward with evidence of each essential element of their claims, such that a reasonable jury could find in his favor. *See Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1080 (11th Cir. 1990).   The burden is not a heavy one; however, the non-moving party "[m]ay not rest upon the mere allegations and denials of [its] pleadings, but [its] response ... must

set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). "It is the obligation of the non-moving party, however, not the Court, to scour the record in search of the evidence that would defeat a motion for summary judgment: Rule 56 'requires the nonmoving party to go beyond the pleadings and by [his] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Lawrence v. Wal-Mart Stores, Inc.,* 236 F. Supp. 2d 1314, 1322 (M.D. Fla. 2002) (quoting *Celotex*, 477 U.S. at 324). Moreover, mere conclusory, uncorroborated allegations by a plaintiff in an affidavit or deposition will not create an issue of fact for trial sufficient to defeat a well-supported motion for summary judgment. *See Earley*, 907 F.2d at 1081. The failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial and requires the court to grant the motion for summary judgment. *See Celotex*, 477 U.S. at 322.

"Summary Judgment is as available in patent cases as in other areas of litigation. *Cont'l Can Co. USA, Inc. v. Monsanto Co.*, 948 F.2d 1264, 1265 (Fed. Cir. 1991), *citing, Chore-Time Equip., Inc. v. Cumberland Corp.*, 713 F.2d 774, 778-79 (Fed. Cir. 1983). Although rarely granted in patent cases, summary judgement is appropriate so long as there is no material issue of fact in dispute. Although the ultimate determination of patent validity is a question of law, other factual determinations such as whether an item was anticipated or obvious in light of prior art are questions of fact and are necessary prerequisites to determining validity. *Dennison Mfg. Co. v. Panduit Corp.*, 475 U.S. 809, 810 (1986); *Upsher-Smith Labs. v. Pamlab, L.L.C.*, 412 F.3d 1319, 1322 (Fed. Cir. 2005). Although this case involves mixed questions of law and fact, this Court holds that no material issues of fact exist, and therefore summary judgment shall be granted for

the following reasons.

## III. Discussion

As a preliminary matter, this Court considers the admissibility of Harvey Gerdy's and John Yirga's declarations. Defendants argue that these declarations are inadmissible under the rules of evidence. After considering defendants' objections, this Court finds that, even after considering the statements of Gerdy and Yirga, plaintiff's patents are invalid. As such, defendants' evidentiary objections are denied as moot.

Also, defendants filed, and relied upon, a December 12, 2007 decision from the European Union's Office for Harmonization in the Internal Market (OHIM). Plaintiff argued that this Court should not consider the decision. Regardless of that document's admissibility, this Court did not consider the document in reaching its decision. As such, plaintiff's objections are also denied as moot.

## Analysis

Plaintiff filed the instant litigation claiming that defendants have produced, marketed and sold shoes that infringe plaintiff's three patents. Defendants filed this motion for summary judgment seeking to invalidate plaintiff's patents because of prior art marketed in the US as Crocs brand clog shoes.[2]

Crocs shoes were sold prior to October 2002. Two models of Crocs shoes are at issue in this litigation: the Beach model and the Cayman model. The Beach model first appeared on the Crocs website on October 16, 2002 and was sold to consumers as of November 2002. Crocs

---

[2]The Crocs brand was originally owned by Western Brands, LLC which later became Crocs, Inc. These companies will be referred to as "Crocs" in the remainder of this Order.

began to advertise the Cayman model on its website by February 5, 2004. The USTPO issued

Crocs[3] U.S. Patent No. D517,789 ('789 patent) on March 28, 2006.

As detailed above, Michael Wolf applied for a patent on February 18, 2005. The USTPO

granted that application and issued Wolf patent number '263 on October 3, 2006. Wolf also

applied for two subsequent patents on February 1, 2006 and February 16, 2006, respectively.

Those applications were also granted as patent number '032 and patent number '033,

respectively, on June 26, 2007, respectively. Wolf later assigned all three patents to plaintiff. In

its statement of uncontroverted facts, plaintiff conceded that the '032 and the '033 patents are

"substantially similar" to the '263 patent. As such, this Court will rely on the design in the '263

patent when determining whether all three of plaintiff's patents should be invalidated. If the

'263 patent is substantially similar to Crocs's prior art, then all three of the plaintiff's patents will

be invalidated. For the following reasons, this Court holds that the '263 patent is anticipated by

the '789 patent. As such, all three of plaintiffs patents are invalidated.

*Applicable Burden of Persuasion*

Once a patent is issued, its validity is presumed "based on the acknowledged experience

and expertise of the United States Patent [and Trademark] Office and recognition that patent

approval is a species of administrative determination supported by evidence." *Graybar*, at 1360;

*quoting*, *Ludlow Corp. v. Textile Rubber & Chemical Co.*, 636 F.2d 1057, 1059 (5th Cir. 1981);

35 U.S.C. § 282. The onerous burden of establishing a patent's invalidity rests on the party

asserting invalidity and must be established by clear and convincing evidence. *Graybar*, at 1360;

*Tech. Licensing Corp. v. Videotek, Inc.*, 545 F.3d 1316, 1327 (Fed. Cir. 2008). If, however, the

---

[3]The patent application was filed by Scott Seamans of Crocs on May 28, 2004.

patent office did not consider pertinent prior art when reviewing the patent application, then the burden of proof is reduced to proof by a preponderance of the evidence. *Greybar* at 1361. A party provides clear and convincing evidence "when it proves in the mind of the trier of fact 'an abiding conviction that the truth of its factual contentions are highly probable'." *Intel Corp. v. U.S. Int'l Trade Comm'n*, 946 F.2d 821, 830 (Fed. Cir. 1991), *citing, Colorado v. New Mexico*, 467 U.S. 310 (1984). Preponderance of the evidence is established where the evidence weighs, however slightly, in favor of one party over the other. *Grogan v. Garner* 498 U.S. 279, 287 (1991).

When plaintiff applied for what was later issued as the '263 patent, it provided the patent examiner with pictures and drawings of the Crocs Beach and Cayman models from the Crocs website. Plaintiff did not, however, update the patent application to show that Crocs had already been granted the '789 patent. Plaintiff asserts that it was unaware that Crocs had been issued a patent until after its '263 patent was issued. Thus, at the time the patent examiner granted plaintiff the '263 patent, she examined various pictures and drawings of Crocs shoes from the Crocs website, but did not know that these shoes were patented on March 28, 2006. Accordingly, the issue is whether the patent examiner considered this prior art when reviewing the patent application so as to reduce the burden of persuasion to the preponderance standard.

Defendants contend that preponderance standard should be applied because the '789 application included clearer images of the Crocs shoes as well as the fact that "the '789 Patent is broader than the commercial embodiments" actually relied on by the examiner.

This Court disagrees. Although the best possible images of the Crocs shoes may have been in the patent application, *Graybar* states that the burden of persuasion is lowered only if the

patent examiner did not examine the prior art. *See also,* Ad Hoc Committee to Study *Holmes Group, Inc. v. Vornado Air Circulation Systems, Inc.,* Report of the Ad Hoc Committee to Study *Holmes Group, Inc. v. Vornado Air Circulation Systems, Inc.,* 12 Fed. Circuit B.J. 713, 717 (2002)(warning that different circuits apply the burden of persuasion differently, encouraging partes to engage in forum shopping). Since the examiner did examine the prior art, defendants are required to prove facts by clear and convincing evidence. This is not to say, however, that the differences between what appears in the prior art considered by the patent examiner and what appears in the '789 patent are irrelevant. This Court will consider all of the evidence presented to determine whether plaintiff's patents are invalid. Since this Court holds that the patent is anticipated under § 102 it will not determine whether the patent was also obvious under § 103.

*Design Patent Validity*

This litigation involves the validity of a design patent. Black's Law Dictionary defines a design patent as "[a] patent granted for a new, original, and ornamental design for an article or manufacturer; a patent that protects a product's appearance or nonfunctional aspects." Black's Law Dictionary 1147 (7th Ed. 1999). As such, a design patent protects the ornamental aspects of a design and the patented design need not have any practical utility. *In re Nuijten,* 500 F.3d 1346, 1357 n 9 (Fed. Cir. 2007); *OdzOn Prods. v. Just Toys,* 122 F.3d 1396, 1404 (Fed. Cir. 1997). For a design patent to be valid, it must show "a high degree of uniqueness, ingenuity and inventiveness" demonstrating "greater skill than that exercised by the ordinary designer who is chargeable with knowledge of the prior art." *General Time Instruments Corp. v. U.S. Time Corp.,* 165 F.2d 853, 854 (2nd Cir. 1948); *Stein v. Mazer,* 204 F.2d 472, 474 (4th Cir. 1953). The tests for determining the validity of a design patent are the same tests courts use to determine whether

a utility patent are valid. *Bernhardt, L.L.C. v. Collezione Europa USA, Inc.*, 386 F.3d 1371, 1377 (Fed. Cir. 2004).

Federal law provides that a design patent can be issued to an applicant if the item has a new, original and ornamental design. 35 U.S.C. § 171. The congressional purpose of this section is to "reward, and thereby to encourage, creative artistic activity rather than mere changes of detail which may produce 'novelty' but do not reflect 'invention.'" *Hadco Prods., Inc. v. Walter Kidde & Co.*, 462 F.2d 1265, 1274 (3rd Cir. 1972); *see also, H.W. Gossard Co. v. Neatform Co.*, 143 F.Sup.139, 143 (S.D.N.Y. 1956)(holding that sustaining "a patent for every slight change in decorative design would create a series of little monopolies in the decorating field which would hamper rather than help the development of the arts").

The statute further provides that "[t]he provisions of this title relating to patents for inventions shall apply to patents for designs, except as otherwise provided." 35 U.S.C. § 171. As such, a person is entitled to a patent unless (1) the invention was known or used by others before the applicant conceived of the item or (2) another entity previously received a patent or applied for a patent that described the invention. 35 U.S.C. § 102(a) & (e) (listing other exceptions not relevant to this litigation). Thus, a patent cannot be granted "if the invention was either 'anticipated' by prior art, or 'on sale' or 'in public use' more than one year prior to the date of the patent application." *Mfg. Research Corp. v. Graybar Elec. Co., Inc.*, 679 F.2d 1355, 1360 (11th Cir. 1982).

*Anticipation*

Anticipation occurs where a prior reference either explicitly or inherently discloses "each and every element of the claim with sufficient clarity to prove its existence in the prior art."

*Motorola, Inc. v. Interdigital Tech. Corp.*, 121 F.3d 1461, 1473 (Fed. Cir. 1997); *Atlas Powder Co. v. Ireco Inc.*, 190 F.3d 1342, 1346 (Fed. Cir. 1999). A patent is anticipated under 35 U.S.C. § 102 "if each and every limitation is found either expressly or inherently in a single prior art reference." *Bristol-Meyers Squibb Co. v. Ben Venue Labs., Inc.*, 246 F.3d 1368, 1373 (Fed. Cir. 2001).

Until recently, courts would first construe the disputed design and then compare that design to the prior art to determine if a design was anticipated. *Door-Master Corp. v. Yorktowne, Inc.*, 256 F.3d 1308, 1312 (Fed. Cir. 2001). Construing a design patent is different from construing an utility patent. *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 679 (Fed. Cir. 2008). The *Egyptian Goddess* court explained that "design patents 'typically are claimed as shown in drawings,' and that claim construction 'is adapted accordingly.'" *Id.* In fact, a design is better explained by a drawing than by a verbal description. *Id.* For that reason, unlike utility patents, district courts are not required to provide a detailed description of the claimed design. *Id.* The *Egyptian Goddess* court cautioned district courts who choose to offer a detailed verbal description of the design: "the court should recognize the risks entailed in such a description, such as the risk of placing undue emphasis on particular features of the design and the risk that a finder of fact will focus on each individual described feature in the verbal description rather than on the design as a whole." *Id.* at 680. That court did recognize, however, that a court may wish to describe certain features of the disputed design and the prior art to explain its own analysis. Thus, it appears that a trial court has discretion to offer a detailed verbal description of the design, but may instead rely on the actual picture of the design instead.

This Court will nonetheless offer a detailed construction of the '789 and '263 patents as

the *Egyptian Goddess* court did not extend the new relaxed construction requirements when a court determines patent invalidity. *See, Arc'teryx Equip., Inc. v. Westcomb Outerwear, Inc.*, 2008 WL 4838141 *2 (D. Utah 2008)(declining to verbally describe the design patent when holding that defendant did not infringe the design and declining to rule on whether the patent was invalid). Even with the difficulties described above, courts must still construe design patents when determining patent validity so that others can understand the reasoning behind its decision. When comparing the designs, the Court will describe, of course, the drawings contained in the '263 patent as well as the drawings contained in the '789 patent, included with this order as Exhibit A.

<u>*Concealed Features Cannot be Considered*</u>

When comparing a disputed drawing with prior art, only those portions of the design that are visible in the "normal and intended use" of the item are eligible for patent protection. Generally, the concealed features of a design are not a proper basis for patent protection because their appearance is not a matter of concern. *KeyStone Retaining Wall Systems, Inc. v. Westrock, Inc.*, 997 F.2d 1444, 1450-51 (Fed. Cir. 1993).

Plaintiff cites *Contessa Food Products v. Conagra, Inc.*, arguing that all parts of the shoe, including the sole and insole should be considered. 282 F.3d 1370, 1380-81. *Contessa Food* involved a patent for cabinet doors. That court held that the interior hinge of the door was visible during the use of the product because, even though not always visible, the interior door hinges were visible when the cabinet doors were open. *Id.* at 1381. Specifically contrary to plaintiff's assertion that this Court must consider all parts of the product visible at the point of sale, *Contessa Food* held "that the 'ordinary observer' analysis is not limited to those features visible

at the point of sale, but instead must encompass all ornamental features visible at any time during the normal use of the product." *Id.* at 1381. As such, this Court holds that the law requires a court to consider only those portions of the product that are visible during normal use, regardless of whether those portions are visible during the point of sale.

This lawsuit concerns patents for clog style shoes. When a shoe is in use, it's insole is, obviously, hidden by the user's foot. The sole of the shoe, however is sometimes visible while a person is sitting or walking. As such, this Court will not consider any aspects of the insoles of the shoes, but will consider the sole of the shoes as those are visible during use. This determination is consistent with the reasoning expressed in *Contessa Food.*

Construing the '789 and '263 Patents

The '789 patent depicts a clog type shoe with numerous sporadically positioned circular holes arranged on the top of the shoe and sporadically spaced rectangular holes lining the toe of the shoe that wrap around and continue down the outside of the shoe. The toe of the shoe is a semi-rounded box style. The top of the shoe covers the majority of the top of the wearer's foot and is curved upward slightly. The back is open with a heel strap attached by rivets; the strap swivels to either the front or back of the shoe. The sole is flat bottom with an arch shaped indentation from the inside to the outside of the shoe under the arch of the foot. Any additional ornamental features of the shoes are shown in broken lines on the '789 patent, including any design on the sole of the shoe or textured markings on the top or sides of the shoe. The patent states "the broken line showing of the sole and surface treatment of the upper is for illustrative purpose only and forms no part of the claim design." Although not part of the patent, the broken lines show that the perimeter of the toe and heel portion of the sole is covered in raised portions

in a rectangle shape. Within the toe and heel portion of the sole, there are long rectangular shapes lining the space with a flat line running down the middle of the space. The broken lines also indicate some textured ornamentation on the heel strap, a strip of texture wrapping positioned under the rectangular holes at the toe of the shoe and around the entire shoe. Finally, there is a thick horizontal strip of texture running horizontally from one rivet to another across the top of the shoe.

The '263 patent is nearly an identical clog type shoe with the same overall shape, type of circular holes on the top of the shoe and the same type of rectangular holes lining the toe of the shoe, that wrap around and continue down the outside of the shoe. The '263 patent does contain five more circular holes on the top of the shoe and two more rectangular holes down the side of the shoe than in the '789 patent. Some of the circular and rectangular holes appear to be positioned in the same place as the '789 patent, but others are arranged in a slightly different pattern. The top of the shoe covers the majority of the top of the wearer's foot and is curved upward slightly. The back is open with a heel strap attached by rivets; the strap swivels to either the front or back of the shoe. The sole is a flat bottom shoe that does not have an arch shaped indentation that runs under the arch of the foot.

Unlike the '789 patent, the '263 patent claims the design on the sole of the shoe and textured markings on the top and sides of the shoe. The sole depicts two rows of wave-like rectangles on both the ball of the foot and heel, surrounded by multiple square-like shapes turned slightly to resemble diamonds. There is also a thick band of textured dots running horizontally around the shoe, located under the section of the shoe that contains the rectangular holes on the toe and side of the shoe. Under that, is a smooth section continuing down to the sole of the shoe.

Across the top of the shoe, running from one rivet to another, is a smooth band, then a textured band, then another smooth band and then another textured band. The remainder of the top of the shoe, down to the toe of the shoe, is smooth.

Ordinary Observer Test

In addition to clarifying a trial court's duty to construe a design patent prior to issuing a motion for summary judgment on patent validity, the *Egyptian Goddess* court also clarified how a district court should compare a design to prior art.[4] It still remains true that identity of design is established by "sameness of appearance" wherein "mere difference of lines in the drawing or sketch ... or slight variances in configuration ... will not destroy the substantial similarity." *Gorham Co. v. White*, 14 Wall. 511, 526-27 (1871). If plaintiff's design is substantially similar to the Crocs design, plaintiff's patents are invalid. *Gorham Mfg. Co. v. White*, 81 U.S. 511, 528; *Payless Shoesource, Inc. v. Reebok Int'l Ltd.*, 998 F.2d 985, 990 (Fed. Cir. 1993).

The *Egyptian Goddess* court rejected the point of novelty test holding that "the point of novelty test, as a second and free-standing requirement for proof of design patent infringement, is inconsistent with the ordinary observer test [established in prior case law] and is not needed to protect against unduly broad assertions of design patent rights." *Id.* at 672. The point of novelty test was rejected as an independent test for the following reason:

> ... the point of novelty test has proved more difficult to apply where the claimed

---

[4] This Court recognizes that the *Egyptian Goddess* decision was based on a district court's grant on the defendant's motion for summary judgment for noninfringement. Although this order finds that plaintiff's patents are invalid, the test to determine whether a design is anticipated by prior art requires this Court to apply the ordinary observer test and the point of novelty test. Since *Egyptian Goddess* changed the way courts must conduct that analysis, this Court finds it appropriate to expand the application of *Egyptian Goddess* when determining whether a design was anticipated by prior art.

design has numerous features that can be considered points of novelty, or where multiple prior art references are in issue and the claimed design consists of a combination of features, each of which could be found in one or more of the prior art designs. In particular, applying the point of novelty test where multiple features and multiple prior art references are in play has led to disagreement over whether combinations of features, or the overall appearance of a design, can constitute the point of novelty of the claimed design.

*Id.* at 671, 677. This Court finds the analysis of the Federal Circuit particularly pertinent in this case since much of the parties' briefs and oral argument involved disagreement on this very issue: whether this Court could consider the designs as a whole, or whether it must limit its analysis to only the specific points of novelty.

Moreover, the *Egyptian Goddess* court also noted that the point of novelty test should be abandoned as an individual analysis because defendants have taken advantage of instances where a particular design is particularly novel or has many points of novelty. In those instances, the point of novelty test permitted defendants "to argue that its design does not infringe because it does not copy all of the points of novelty, even though it may copy most of them and even though it may give the overall appearance of being identical to the claimed design." *Id.* at 677. This new application of the ordinary observer test, therefore, will not allow a defendant to exaggerate minuscule differences between two designs simply because those differences are a point of novelty. *Id.*

Pursuant to the ordinary observer test, a design is anticipated by prior art "if, in the eye of an ordinary observer, giving such attention as a purchaser usually gives, the two designs are substantially the same, if the resemblance is such as to deceive such an observer, inducing him to purchase one supposing it to be the other." *Gorham* at 528. As such, the two designs need not be identical to the "eye of an expert [as] there never could be piracy of a patent design, for human

ingenuity has never yet produced a design, in all its details, exactly like another, so like, that an expert could not distinguish them." *Gorham*, at 527.  When a design is particularly novel or has multiple points of novelty, courts must consider how "an ordinary observer with knowledge of the prior art designs would view the differences between the claimed and accused designs[.]" *Egyptian Goddess*, at 677.

## Applying the Ordinary Observer Test

It is undisputed that the '789 patent was filed before the '263 patent.  Moreover, it is not disputed that Crocs had images of the Beach model clog on its internet site as of October 17, 2002 and images of the Cayman model as of April 4, 2004.  In November of 2002, Crocs displayed the Beach model at the Fort Lauderdale, Florida Boat Show.  It is also undisputed that plaintiff filed the '263 patent application on February 18, 2005.

After considering the ornamental aspects depicted in the '789 patent and the '263 patent, this Court holds that a reasonable jury could only find that the '263 patent is invalid because it does not show "a high degree of uniqueness, ingenuity and inventiveness" and does not demonstrate "greater skill than that exercised by the ordinary designer who is chargeable with knowledge of the prior art." *General Time Instruments Corp. v. U.S. Time Corp.*, 165 F.2d 853, 854 (2nd Cir. 1948); *Stein v. Mazer*, 204 F.2d 472, 474 (4th Cir. 1953).  The '263 does not contain a new, original and ornamental design as required by 35 U.S.C. § 171.

This Court construed the '789 and '263 patents above but a brief comparison shows that both shoes share the same general shape.  The toe of the shoe is a semi-rounded box style.  The front of the toe portion has rectangular holes.  The top of the shoe covers the majority of the foot and has circular holes.  The back of the shoe is open, with most pictures depicting a heel strap

that swivels on a rivet attached just above the instep of the shoe and another rivet attached directly across at the out-step of the shoe. Both shoes depict raised patterns of material on the sole of the shoe. The actual shape of the overall shoe and the sole is nearly identical between the two shoes.

Plaintiff named points of difference between the '789 patent and the '263 patent that it says are more than mere changes of detail and that show actual invention. Plaintiff points to the number and positing of the circular and rectangular holes. Next, plaintiff argues that the raised pattern on the sole of the clog is different between the two patents. Finally, plaintiff argues that the shape of the toe portion of the clog is different between the two designs as the toe in the '263 patent is "block-shaped and angular" and the toe in the '789 patent is rounded.

Although perhaps novel, none of these slight changes of detail constitute invention. While it is true that this Court must consider particular features of the shoes, this Court must also consider those parts in the context of the overall impression of the shoe. Slight variations on the number and position of the circular holes on the top of the shoe, the rectangular holes on the toe of the shoe as well as the design of different shaped rectangles on the sole of the shoe would not convince a reasonable jury. or an ordinary observer with knowledge of the prior art, that the limitations were not inherently disclosed in the '789 patent. This conclusion does not change merely because plaintiff slightly changed the arrangement of the textured portions on the top and around the bottom portion of the sides of the shoe. Finally, plaintiff used the same style of heel strap attached in the same location. Plaintiff designed a "knock off" of the Crocs shoe designed to look so similar to the original so that it could be mistaken for the Crocs design. In so doing, its design is anticipated by the '789 patent.

After reviewing the parties motion, response, reply and the attached exhibits, this Court concludes that there are no genuine issues of material fact and that any reasonable juror would conclude that the '263 patent was anticipated by the '789 patent and is therefore invalid. Accordingly, it is hereby,

ORDERED AND ADJUDGED that defendants' motion for summary judgment **[DE 25]** is GRANTED.  Plaintiff's patent numbers D529,263, D545,032 and D545,033 are invalid as having been anticipated by patent number D517,789.  Final judgment shall be issued by separate order.

DONE AND ORDERED in Chambers at West Palm Beach, Florida, this 22 day of January, 2009.

_____/s/ Kenneth L. Ryskamp_____

KENNETH L. RYSKAMP
UNITED STATES DISTRICT JUDGE

Copies provided:
All counsel of record

US00D529263S

(12) **United States Design Patent**
Wolf

(10) Patent No.: **US D529,263 S**
(45) Date of Patent: ** **Oct. 3, 2006**

(54) **CLOG**

(75) Inventor: **Michael Wolf**, Boca Raton, FL (US)

(73) Assignee: **International Seaway Trading Corporation, Inc.**, Boca Raton, FL (US)

(**) Term: **14 Years**

(21) Appl. No.: **29/223,987**

(22) Filed: **Feb. 18, 2005**

(51) LOC (8) Cl. .................................................. 02-04
(52) U.S. Cl. ...................................................... D2/923
(58) Field of Classification Search ................ D2/923, D2/898, 916–920, 929–933, 947–969; 36/7.5, 36/9 R, 10, 9 A, 11.5, 32 R
See application file for complete search history.

(56) **References Cited**

U.S. PATENT DOCUMENTS

| | | | | |
|---|---|---|---|---|
| D280,461 S | * | 9/1985 | Horn | D2/919 |
| D310,289 S | * | 9/1990 | Farina | D2/926 |
| D381,794 S | * | 8/1997 | Gelli | D2/916 |
| D416,667 S | * | 11/1999 | Lamstein | D2/916 |
| D453,990 S | * | 3/2002 | Davidowitz et al. | D2/969 |
| D473,040 S | * | 4/2003 | Hawker et al. | D2/896 |
| D479,906 S | * | 9/2003 | Hawker et al. | D2/969 |

OTHER PUBLICATIONS

Crocs explosion image of shoe. Crocs Shoes website. Dec. 2002.□□http://web.archive.org/web/20021213143656/www.crocs.com/explosion.asp?p=explosion.*
Five pages of photographs of a CROCS™ Beach Model Shoe. The CROCS™ Beach Model Shoe, as shown in the five pages of photographs.
Crocs image of shoe. Advertisment [online]. Western Brands LLC, [retrieved on Jan. 11, 2005]. Retrieved from the Internet <http://shopping.netsuite.com/s.n1/c.294214/sc.2/category.3/it.A/id.468/.fjsessionid=ac112b>.

Crocs image of shoe. Advertisment [online]. Western Brands LLC, [retrieved on Feb. 11, 2005]. Retrieved from the Internet: <URL:http://shopping.netledger.com/app/site.n1?site=294214>.
Crocs image of shoe. Advertisment [online]. Western Brands LLC, [retrieved on Feb. 11, 2005]. Retrieved from the Internet: <URL:http://shopping.netsuite.com/s.n1/c.294214/ck.RdfsphCsAM8uPnQW/vid.RdfsphCsCwu>.
Crocs image of Shoe. Advertisment [online]. Western Brands LLC, [retrieved on Feb. 11, 2005]. Retrieved from the Internet: <URL:http://shopping.netledger.com/app/site/site.n1?site=294214>.

* cited by examiner

*Primary Examiner*—Stella Reid
*Assistant Examiner*—Rashida C. McCoy
(74) *Attorney, Agent, or Firm*—Watts Hoffman Co., L.P.A.

(57) **CLAIM**

I claim the ornamental design for a clog, as shown and described.

**DESCRIPTION**

FIG. 1 is a right perspective view of a clog showing my new design;

FIG. 2 is a right side elevation view thereof;

FIG. 3 is a left side elevation view thereof;

FIG. 4 is a front view thereof;

FIG. 5 is a rear elevation view thereof;

FIG. 6 is a top plan view thereof; and,

FIG. 7 is a bottom plan view thereof.

The broken lines shown are for illustrative purposes only and form no part of the claimed design.

**1 Claim, 6 Drawing Sheets**





EXHIBIT
A
PENGAD-Bayonne, N. J.



# Fig. 1



Fig. 2

Fig. 3



**Fig. 4**



**Fig. 5**

Case 9:08-cv-80163-KLR   Document 42   Entered on FLSD Docket 01/22/2009   Page 24 of 31



Fig. 6



**Fig. 7**

US00D517789S

(12) **United States Design Patent**
Seamans

(10) Patent No.:    **US D517,789 S**
(45) Date of Patent:    ** Mar. 28, 2006

(54) **FOOTWEAR**

(75) Inventor: Scott Seamans, Boulder, CO (US)

(73) Assignee: Crocs, Inc., Niwot, CO (US)

(**) Term: **14 Years**

(21) Appl. No.: 29/206,427

(22) Filed: **May 28, 2004**

**Related U.S. Application Data**

(63) Continuation-in-part of application No. 10/803,569, filed on Mar. 17, 2004, which is a continuation-in-part of application No. 10/602,416, filed on Jun. 23, 2003, and a continuation-in-part of application No. 10/603,126, filed on Jun. 23, 2003.

(51) LOC (8) Cl. .................................................. 02-99
(52) U.S. Cl. ............................................... D2/969
(58) Field of Classification Search ............... D2/903, D2/916–918, 919, 969, 926, 932; 36/4, 8.1, 36/10, 11.5

See application file for complete search history.

(56) **References Cited**

U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 1,392,350 A | 10/1921 | O'Brien | |
| 2,180,924 A | 11/1939 | Dunbar | |
| 2,470,089 A | 5/1949 | Booth | |
| 3,407,517 A * | 10/1968 | Gessner | 36/11.5 |
| 3,698,107 A | 10/1972 | Fukuoka | |
| 4,033,611 A | 6/1977 | Fukuoka | |
| 4,100,685 A | 7/1978 | Dassler | |
| 4,408,401 A | 10/1983 | Seidel et al. | |
| 4,476,600 A | 10/1984 | Seidel et al. | |
| 4,888,887 A | 12/1989 | Solow | |
| 4,967,750 A | 11/1990 | Cherniak | |
| D350,021 S * | 8/1994 | Stein | D2/969 |
| 5,369,895 A | 12/1994 | Hammerschmidt | |
| 5,438,767 A | 8/1995 | Stein | |
| 5,528,841 A | 6/1996 | Pozzobon | |
| 5,561,919 A | 10/1996 | Gill | |
| D381,794 S | 8/1997 | Gelli | |

(Continued)

FOREIGN PATENT DOCUMENTS

| | | |
|---|---|---|
| CA | 2375957 | 9/2002 |
| EP | 0 802 039 A2 | 10/1997 |
| EP | 0 802 040 A2 | 10/1997 |
| EP | 0 802 041 A2 | 10/1997 |
| EP | 0 884 005 A1 | 12/1998 |
| GB | 2322286 | 8/1998 |

OTHER PUBLICATIONS

http://web.archive.org/web/19980420230857/www.birken-stock.com/featprof.htm (3 pages).
Birkenstock®, Spring & Summer 2003 Catalog, Birken-stock Orthopudie GMbh, Germany (82 pages).
Cindy MacDonald, *The Entrepreneurs: they're bilingual, multicultural and talented. Distance and language present no barriers to Quebec plastics processors and mold makers as the province's plastics industry continues to increase its level of exports and welcome new companies,* Canadian Plastics, O'99, v. 57(10), pp. 35–50 (9 pages).
*Comfortable Walking,* Italian Technology, Oct. 1999, n. 3, p. 168 (abstract, 1 page).

(Continued)

*Primary Examiner*—Dominc Simone
(74) *Attorney, Agent, or Firm*   Faegre & Benson, LLP

(57)    **CLAIM**

The ornamental design for footwear, as shown and described.

**DESCRIPTION**

FIG. 1 is a front perspective view.
FIG. 2 is a right side view.
FIG. 3 is a left side view.
FIG. 4 is a front view.
FIG. 5 is a rear view.
FIG. 6 is a top view; and,
FIG. 7 is a bottom view.
The broken line showing of the sole and surface treatment of the upper is for illustrative purpose only and forms no part of the claim design.

**1 Claim, 4 Drawing Sheets**





## US D517,789 S

Page 2

### U.S. PATENT DOCUMENTS

| | | | | |
|---|---|---|---|---|
| 5,814,254 | A | | 9/1998 | Bisconti |
| D416,667 | S | | 11/1999 | Lamstein |
| 6,052,920 | A | | 4/2000 | Bathum |
| D431,346 | S | | 10/2000 | Birkenstock |
| 6,237,249 | B1 | | 5/2001 | Aguerre |
| 6,237,250 | B1 | | 5/2001 | Aguerre |
| 6,256,906 | B1 | | 7/2001 | Matis et al. |
| 6,416,610 | B1 | | 7/2002 | Matis et al. |
| 6,439,536 | B1 | | 8/2002 | Piccolo |
| D473,040 | S | * | 4/2003 | Hawker et al. .............. D2/932 |
| D476,797 | S | | 7/2003 | Schenone |
| D479,034 | S | * | 9/2003 | Tzenos ........................ D2/926 |
| D479,906 | S | * | 9/2003 | Hawker et al. .............. D2/969 |
| 6,640,464 | B1 | | 11/2003 | Hsin et al. |
| D499,234 | S | * | 12/2004 | Dal Magro et al. .......... D2/916 |
| 6,860,035 | B1 | | 3/2005 | Girard |
| 2002/0124434 | A1 | | 9/2002 | Hsin et al. |
| 2003/0074806 | A1 | | 4/2003 | Uric et al. |

### OTHER PUBLICATIONS

*Defendant's Response to Request for Particulars, Foam Creations Inc.* vs. *Holey Soles Holdings Ltd.,* Ontario, Canada Federal Court, Court File No. T–161–05, Apr. 22, 2005, Oyen Wiggs Green & Mutala LLP (including Appendices A–C, 236 pages).

*Defendant's Statement of Defence, Foam Creations Inc.* vs. *Holey Soles Holdings Ltd.,* Ontario, Canada Federal Court, Court File No. T–161–05, Mar. 10, 2005, Oyen Wiggs Green & Mutala LLP (9 pages).

*Engage® polyolefin elastomers, the critical ingredient for Success,* DuPont Dow Elastomers, Copyright© 2000, DuPont Dow Elastomers, www.dupont–dow.com/engage (12 pages).

*FinProject Brews an Extralight (Evasol Plastics and Finproject signed a joint venture agreement to introduce a range of new block and net–fit soles for shoes ),* Footwear News, World Week, Aug. 4, 1997, v. 53, n. 31, p. 8 (3 pages).

*Injected Eva,* Macplas International, Aug. 1999, n. 10, p. 90. (abstract, 1 page).

Luisa Zargani, *One Fine Year; Anton Magnani's Quirky Dry–Shod Designs have Gained the Italian Designer Respect, Recognition and a Deal with Comme Des Garcons,* Footwear News, Aug. 2, 1999, p. 102 (2 pages).

*Plaintiff's Further Request for Particulars, Foam Creations Inc.* vs. *Holey Soles Holdings Ltd.,* Ontario, Canada Federal Court, Court File No. T–161–05, May 12, 2005, Ridout & Maybee (including Schedule A, 6 pages).

*Plantiff's Reply, Foam Creations Inc.* vs. *Holey Soles Holdings Ltd.,* Ontario, Canada Federal Court, Court File No. T–161–05, Ridout & Maybee (7 pages).

*Plantiff's Request for Particulars of Defence, Foam Creations Inc.* vs. *Holey Soles Holdings Ltd.,* Ontario, Canada Federal Court, Court File No. T–161–05, May 1, 2005, Ridout & Maybee (5 pages).

*Plantiff's Statement of Claim, Foam Creations Inc.* vs. *Holey Soles Holdings Ltd.,* Ontario, Canada Federal Court, Jan. 28, 2005, Ridout & Maybee LLP (8 pages).

Rhoda Miel, *Snowshoe Walks Away with Best Design,* Plastic News, Apr. 22, 2002, v. 14, n. 8, p. 4 (2 pages).

*The Elastomers Times: Engage Adds Comfort to Sporting Components,* Chemical Business New Base: The Elastomers Times; Dec. 1, 2000 (2 pages).

*Trade Name Record,* Official Gazette of the U.S. Patents and Trademarks Office, Mar. 24, 1998, 1208, n. 4, p. 73, (abstract, 1 page).

waldenstore.com, *Footwear Waldies,* Aug. 4, 2003, http://www.waldenstore.com/waldies.html, (1 page).

*Walking on Modified Eva,* Italian Technology, May 1999, n. 2, p. 121, (abstract, 1 page).

* cited by examiner

**U.S. Patent**     Mar. 28, 2006     Sheet 1 of 4     **US D517,789 S**



FIG.1

**U.S. Patent**      Mar. 28, 2006      Sheet 2 of 4      **US D517,789 S**



FIG.2



FIG.3

U.S. Patent     Mar. 28, 2006     Sheet 3 of 4     US D517,789 S



FIG.4



FIG.5



FIG.6



FIG.7